## Joseph Welch *against* Archibald Murray.

S. C. 4 Dall. 320.

As between creditors, the priority of their judgments is governed by the times of their entry, and not by relation to the preceding term.

A case was also filed for the opinion of the court, on a rule

[Welch *v.* Murray.]

to bring into court, the money proceeding from the sale made by the sheriff.

On the 29th July 1798, the defendant, Murray, executed to the plaintiff, Welch, a bond in the penalty of 2500 dollars, with a warrant of attorney to confess judgment ; by virtue of which warrant, judgment was signed in the Supreme Court in favour of the plaintiff against the defendant, on the 7th August 1798, for the penalty of the bond. The declaration was entitled, and the judgment entered as of the preceding March term.

On the 2d August 1798, the defendant executed to Catharine Ewing, a bond in the penalty of 240 dollars, with a warrant of attorney to confess judgment ; by virtue of which warrant, judgment was entered in the Court of Common Pleas, for the said Catharine Ewing against the defendant on the 3d August 1798. The declaration was entitled, and the judgment entered as of the preceding June term.

Welch took out execution, and sold the defendant's real estate ; and the proceeds being insufficient to satisfy both judgments, the question for the opinion of the court is, whether the said Catharine Ewing is entitled to be paid the amount of the judgment by her entered, before payment is made to the said Welch ?

Mr. Wallace, for the plaintiff, Welch. The only question is, which judgment has the priority in law ?

Judgments at common law, between subject and subject, relate no farther back than the first day of the term in which they were recovered, in respect of the lands of the debtor. And now by the statute of frauds, 29 Car. 2, c. 3, the judgment shall not bind the land in the hands of a *bona fide* purchaser, but only from the time of signing the same. 3 Bl. Com. 420. At common law, every judgment entered in vacation, relates to the first day of the preceding term. A statute acknowledged on the 22d *January between the *essoin* day and the first day of full term, was postponed to a judgment confessed on the 23d January. Stanford *v.* Cooper, Cro. Car. 102. S. C. Hutt. 95. S. C. Hetl. 72. S. C. 14 Vin. 616, pl. 6.

*[*198]*

Every judgment entered before the *essoin* day of a term, is of the term precedent : but if entered after the *essoin* commenced, it is of the present term. 12 Mod. 519. 6 Mod. 191. Yelv. 35. Unless the contrary appears of record. 3 Burr. 1596. The reason is given for this relation. The term and vacation are considered as one day. 1 Wils. 39. Lord PORCHESTER's case is mentioned by BULLER, J. in 1 T. R. 117. There were two judgments ; but as they both referred to the same day, the court held, that the priority of one could not be averred.

Judgments are good by relation, though the defendant died before actual signing. Northern *v.* Olliver, 2 Barnes 265, (266, new edit.) Hall *v.* Morse, 2 Barnes 208, (267.) Savil *v.* Wiltshire, Ib. 212, (270.) Fawkes *v.* Atkinson, Ib. 209, (268.) S. C

[Welch *v.* Murray.]

Willes, 427. The reason given is, that all judgments are taken to be pronounced in term term. And so far has this principle been carried, that where a rule had been made to permit a judgment to be entered on an old warrant, the court refused to discharge the rule, though the party was dead at the time it was made, on the ground that *quod fieri non debet, factum valet.* 2 Stra. 1081. Chancey *v.* Needham. The Court of King's Bench was lately called upon to examine the propriety of the rule, that a judgment in vacation should relate back to the first day of the term. But Lord Chief Justice KENYON said, the court were bound down by the current of authorities, all speaking the same language. 6 T. R. 24.

The British statutes of 29 Car. 2, c. 3, obviates some of the hardships which may be supposed to attend the rule, that judgments relate to the first day of the term, sect. 13, 14, 15. Our act of 21st March 1772, pursues the same language, when it provides in sect. 3, that "judgments as against purchasers *bona* "*fide* for valuable consideration, of lands, tenements or heredita- "ments, to be charged thereby, shall, in consideration of law, be "judgments only from such time as they shall be signed, and "shall not relate to the first day of the term whereof they were "entered " &c. 1 St. Laws, 641. The English books are filled with authorities, that the statute of frauds concerns only pur chasers, and not creditors ; as to creditors, the effect of judg ments remains as it was at common law. Robinson *et al. v.* Tonge *et al.*, 3 Wms. 398. 2 Equ. Abr. 259. pl. 16. 454, pl. 14. Finch *v.* Earl of Wilchelsea, Ibid. note. Order *v.* Woodard, 1. Salk. 78. 7 Mod. 93. 2 Lord Raym 766, 849. Duke of Norfolk's case, *7 Mod. 39. 1 Salk. 401. 1 Saund. 219, Williams's note. 2 Saund. 9. Fuller *v.* Jocelyn, 2 [*199 Stra. 882.

The principle of the technical relation of a judgment to the first day of the term, as between different creditors, has in fact been recognized in this court on full argument in Hooton *v.* Will, 1 Dall. 450. There it was determined that the plaintiff's judgment entered on the 16th September, related back to the 4th of the same month, the first day of the term, so as to exclude a domestic attachment which issued on the 5th of the same September.

The reason why nobody shall be permitted to aver that a judgment was signed after the first day of the term, is, because the fact is not relevant : the legal consequences do not depend upon the truth of the fact, but upon the rule of law, that judgments shall be deemed complete, and bind to all intents and purposes by relation. 2 Burr. 967.

It may be objected, that the usage which has obtained amongst sheriffs, as to paying off judgments according to their priority in point of time, shews the opinion of the profession on this subject ; but the usage of a particular office cannot prevail in the decision of legal questions ; usage to grow into a law, must

[Welch *v.* Murray.]

be a general usage, *communiter usitata et approbata.* 3 Burr. 767. Even mercantile usage cannot controul the settled law, nor should it be received for that purpose. 2 Burr. 122. Inno- vation ought not to be made ; but precedents should be followed, unless they are flatly unjust, and contrary to reason. 1 Bla. Com. 69.

The law cannot receive its cue from the hardship of particu- lar cases. It must not vary according to abstract notions, either of right or convenience. But fiction works no wrong in the present instance, both debts are equally meritorious, and Welsh's obligation precedes in point of time.

Mr. Rawle in behalf of Mrs. Ewing, observed that in many particulars, our laws differ from those of England. There stat- utes take effect from the first day of the sessions of parliament; but it is not so here. There lands cannot be sold for the pay- ment of debts ; here they may be sold. 1 St. Laws, 67. Our local situation demands in many instances a departure from British customs. Sheriffs and other ministerial officers have uniformly been governed in the distribution of monies arising on the sales of lands, by the times of entering the judgments, without the smallest respect to the terms of which the declara- tions were entitled, or to which the judgments were supposed to relate. We have the certificates of three sheriffs, which fully shew their practice in this particular ; but we have little occa- sion to use them, as every judge and gentleman of the profession must be well informed *on this point, from their own ex- *200] perience. That a judgment entered on the 7th August 1798, should be preferred to one entered on the 3d of the same month, merely on account of their being confessed in different courts, the first day of the preceding term in the Supreme Court over-reaching that in the Common Pleas, would be a novelty in Pennsylvania. Welch seriously applies to exclude the prior lien fairly obtained by Mrs. Ewing !·

The entry of the judgment was by an act of the party ; the fact is relevant, and proof may be received, to shew the truth. 2 Burr. 959. The court will not indure, that a mere form or fiction of law introduced for the sake of justice, should work a wrong contrary to the real truth and substance of the thing ; and they have (for 150 years) uniformly held, that where it be- came material to distinguish, they would consider the day when a writ was taken out, as the substance, and the *teste* as the form. Ib. 962, 964.

The court therefore are not precluded from inquiry into the times of entering judgments. They appear on record, and ac- cording to the expressions of Lord MANSFIELD, quoted from 3 Burr. 1596, a judgment relates to the *essoin* day of the term, unless the contrary appears on the record. What inconveniences must result from this inquiry into the truth being prevented ? Every judgment entered in the Court of Common Pleas between

[Welch *v.* Murray.]

the first days of the present March term, and of the next term in September, will be over-reached and defeated by a judgment entered up in this court, two days before the next September term. Every mortgage taken between those periods, will, unless the mortgagees are considered as purchasers of the lands mortgaged be affected in like manner. No man can ever be safe who takes a mortgage in the vacation ; and the original jurisdiction of this court and of the Common Pleas of Philadelphia county will be appealed to, in the entry of judgments, according as the first days of the preceding terms in either court shall happen to fall out. These are serious evils, and would justly be deemed innovations on the settled law of Pennsylvania.

Hooton *v.* Will, which has been cited, was determined differently in the Common Pleas. 1 Dall. 187. But without questioning that decision, it is sufficient to say upon this occasion, that it was not a controversy between judgment creditors, as now exists before the court.

The bulk of the cases cited sufficiently prove, that a judgment may be entered up in the vacation, though the defendant be then dead, if he was living on the last day of the preceding term. The reason given is founded on the statute of frauds, which provided only for purchasers *bona fide* for valuable consideration. It holds good, as between the creditor and the representatives *of the deceased debtor; but as between creditors [\*201 contending as to the priority of their judgments, it is otherwise. Judgment creditors are considered as purchasers for valuable consideration to many purposes ; and in this state, where lands are subjected to sale to pay the debts of creditors, the rule peculiarly holds, that creditors must here be viewed in the light of purchasers *pro tanto*, at least to the same extent as mortgagees, by the policy of our judicial system. Hargr. Co. Lit. 293. b. Powel on Powers, Pre. Cha. 478. It is true, it is said by the lord chancellor, in 3 Wms. 399, that the statute of frauds and perjuries concerns only purchasers and not creditors ; so that, as to creditors, the judgment remains as it was at common law. This decree was made Mich. 1735. But in a former case, determined Mich. 1717, anonymous, Prec. Cha. 478, it was decided, that a judgment as between creditors shall have no relation but from the time of signing. A man, the lord chancellor said, who trusted his money on a judgment, was in some sort a purchaser of the land, as he might take out execution and extend the land itself. Relations were not to be favoured in a court of equity. If subsequent judgments should have such relation, it would defeat real creditors who trusted to the priority of their judgments, which my lord chancellor thought ought not to be overthrown by a fiction of law.

It is submitted, that this course of reasoning holds with great force, as applicable to the genius of our government, where by the policy of the laws, lands could not only be extended, but absolutely sold on judgments for the payment of debts.

BY THE COURT. We feel no difficulty whatever in the determination of this case, but we profess to decide only on the point now before us. The uniform uninterrupted practice in Pennsylvania for more than a century has been, to consider the binding effect of judgments upon lands, to take place only from the actual entry of the judgments. Judgments thus entered, have never been supposed liable to be affected by fictions or relations. This custom has been used and approved since the first settlement of the province, and conduces to safety and security. As between conflicting judgment creditors, the well known rule applied to the truth of the fact as to the entry of the judgments, *qui prior est tempore, potior est jure,* must govern.

Judgment in favour of Catharine Ewing.